IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| TERRY WINN, an individual on behalf of herself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>TENET HEALTHCARE CORPORATION d/b/a ST. FRANCIS HOSPITAL,<br><br>    Defendant. | No. 2:10-cv-02140-JPM-cgc |

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL COMPLIANCE WITH
AGREEMENT TO ARBITRATE AND ORDER DENYING AS MOOT PLAINTIFF'S
MOTION TO TRANSFER VENUE.

Before the Court is Defendant's Motion to Dismiss or, in
the Alternative, to Stay Proceedings and Compel Compliance with
Agreement to Arbitrate, filed May 24, 2010. (Docket Entry
("D.E.") 14 ("Def.'s Mot. to Dismiss").)  Plaintiff responded in
opposition on June 23, 2010.  (D.E. 19 ("Pl.'s Resp. to Mot. to
Dismiss").)  Defendant filed a reply brief on July 16, 2010.
(D.E. 31 ("Def.'s Reply").)

Also before the Court is Plaintiff's Motion to Transfer
Venue, filed June 23, 2010. (D.E. 18 ("Pl.'s Mot. to Transfer
Venue".)  Defendant responded in opposition on July 7, 2010.
(D.E. 28 ("Def.'s Resp. to Mot. to Transfer").)

The Court held a telephonic hearing on both motions on
September 23, 2010, and took them under advisement. (D.E. 38.)

For the following reasons, Defendant's Motion to Dismiss is
GRANTED.  Plaintiff's Motion to Transfer Venue is DENIED as
MOOT.

## I. BACKGROUND

This action arises from Plaintiff Terry Winn's allegations
that her former employer, Saint Francis Hospital[1] ("Defendant" or
"SFH"), failed to pay her and other similarly situated employees
overtime compensation allegedly due and owing as a result of
working through unpaid meal breaks. (Collective Action Compl.
("Compl.") ¶¶ 9-10.)  On March 1, 2010, Plaintiff sued Defendant
for violations of the Fair Labor Standards Act ("FLSA"), 29
U.S.C. § 201, et seq., unjust enrichment/quantum meruit, breach
of contract, and violations of the Tennessee Wage Regulation
Act. (Id. ¶¶ 1, 42.)

Plaintiff designated her suit as a collective action under
§ 216(b) of the FLSA. See 29 U.S.C. § 216(b). Under the FLSA,
Plaintiff may sue "for and in behalf of himself . . . and other
employees similarly situated," but "no employee shall be a party
plaintiff to any such action unless he gives his consent in

---

[1] Plaintiff incorrectly identifies the Defendant as Tenet Healthcare
Corporation d/b/a St. Francis Hospital.  The legal name of Saint Francis
Hospital, Plaintiff's former employer, is AMISUB (SFH), Inc. (Decl. of
Everett Liddell ("Liddell Decl.") (D.E. 14-2) ¶ 2.)  According to Defendant,
AMISUB (SFH), Inc. is a Tennessee corporation in a chain of subsidiary
corporations, the ultimate parent of which is Tenet Healthcare Corporation
("THC").  (Liddell Decl. ¶ 2.)

writing to become such a party and such consent is filed in the court in which such action is brought." Id. Apart from Plaintiff, no other current or former SFH employees have filed notices of consent to be parties to the collective action.

## II. DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) and sections 3 and 4 of the Federal Arbitration Act ("FAA"), Defendant asks the Court to dismiss Plaintiff's complaint and compel Plaintiff to arbitrate her claims on the basis that Plaintiff signed an employment agreement under which she agreed to submit all employment disputes to arbitration. (Def.'s Mot. to Dismiss 3.)  In the alternative, Defendant asks the Court to stay the proceedings pending arbitration. (Id.)

### A. Federal Arbitration Act

Section 4 of the Federal Arbitration Act ("FAA") sets forth the procedure to be followed by a district court when presented with a motion to compel arbitration. See 9 U.S.C. § 4; Great Earth Cos., Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002). That section provides, in pertinent part, as follows:

> [a] party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the

arbitration agreement . . . be in issue, the court
shall proceed summarily to the trial thereof.

Id. at 888-89 (citing 9 U.S.C. § 4). Thus, before compelling an
unwitting party to arbitrate, the Court must engage in a limited
review and determine whether Plaintiff entered into a valid
contract with Defendant to arbitrate her claims. See Fazio v.
Lehman Bros., 340 F.3d 386, 392 (6th Cir. 2003).  When analyzing
a motion to compel arbitration of federal statutory claims, a
court must consider "whether Congress intended those claims to
be nonarbitrable." Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th
Cir. 2000)(citation omitted). "If the statutory claim is subject
to arbitration, a court then considers whether the parties have
executed a valid arbitration agreement and, if so whether the
claim falls within the scope of that agreement." Johnson v. Long
John Silver's Rests., 320 F. Supp. 2d 656, 660-61 (M.D. Tenn.
2004) (citing Floss v. Ryan's Family Steak Houses, Inc., 211
F.3d 306, 311 (6th Cir. 2000)).

     The district court must compel arbitration if it is
satisfied that the agreement to arbitrate is not "in issue."
Great Earth Cos., 288 F.3d at 889.  If, however, "the validity
of the agreement to arbitrate is 'in issue,' the court must
proceed to a trial to resolve the question." Id. (citing 9
U.S.C. § 4). "In order to show that the validity of the
agreement is 'in issue,' the party opposing arbitration must
show a genuine issue of material fact as to the validity of the

agreement to arbitrate." Id. (citations omitted). "The required
showing mirrors that required to withstand summary judgment in a
civil suit." Id.[2]

**B. Plaintiff's FLSA Claims are Arbitrable**

Disputes that arise out of employment may properly be made
the subject of mandatory arbitration. See, e.g., Circuit City
Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001). It is now
well-settled that "statutory claims may be the subject of an
arbitration agreement, enforceable pursuant to the FAA." Gilmer
v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991).
Likewise, courts routinely find that an employer may enter into
a binding arbitration agreement for any claims under the FLSA.[3]

---

[2] Plaintiff contends that Defendant's motion must be treated as one for
summary judgment because it relies on matters outside the pleadings. (Pl.'s
Resp. 2-3.) Generally, the Court may not consider matters outside the
pleadings in ruling on a Rule 12(b)(6) motion. See Fed. R. Civ. P. 12(d).
As a result, where a movant relies on matters outside the pleadings, the
motion to dismiss must be treated as one for summary judgment. See Fed. R.
Civ. P. 12(d); see also Smith v. Cheesecake Factory Rests., Inc., No. 3:06-
00829, 2010 WL 441562, at *2-4 (M.D. Tenn. Feb. 4, 2010)(holding that a
defendant's motion to dismiss must be treated as one for summary judgment
where both the plaintiffs and defendants presented affidavits and other
evidence in support and opposition to the motion). As explained above, the
FAA provides by statute the standard of review a court should apply when
presented with a motion to compel arbitration pursuant to the FAA. See 9
U.S.C. § 4. Nevertheless, the standards are substantially similar and the
Court's conclusions would not change were it to apply a traditional summary
judgment analysis.

[3] Other circuits have expressly rejected the contention that FLSA claims
cannot be subjected to mandatory arbitration. See Bailey v. Ameriquest Mortg.
Co., 346 F.3d 821, 823 (8th Cir. 2003) ("The [United States Supreme] Court
upheld the arbitrability of federal age discrimination claims in Gilmer . . .
and the age discrimination statute there at issue had borrowed its remedial
provisions from the previously enacted FLSA.") (citing 29 U.S.C. § 626(b));
see also Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 297-98 (5th
Cir. 2004) (FLSA claims are subject to individually executed pre-dispute
arbitration agreements); Adkins v. Labor Ready, Inc., 303 F.3d 496, 506 (4th
Cir. 2002) (finding that FLSA claims can properly be resolved in mandatory
arbitration proceedings even if the plaintiff is unable to bring a class
action); Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456, 1458 (11th
Cir. 1997) (rejecting contention that district court erred in referring FLSA

See, e.g., Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d
370, 387-88 (6th Cir. 2005) (stating that statutory claims,
including FLSA claims, are properly subject to arbitration, but
invalidating agreement to arbitrate because employer had
exclusive control over pool of potential arbitrators); Floss,
211 F.3d at 313 (noting that "[there is] no compelling reason
for drawing a distinction between . . . statutes [that the
Supreme Court has already held are subject to arbitration] and
the FLSA"); Johnson, 320 F. Supp. 2d at 661 (holding that FLSA
claims are subject to arbitration because, inter alia,
"[n]owhere in the FLSA does Congress mandate a judicial forum");
Fisher v. GE Medical Sys., 276 F. Supp. 2d 891, 894 (M.D. Tenn.
2003) (finding that "contractual arbitration agreements are
enforceable as to claims arising under the FLSA" and compelling
arbitration).

     Accordingly, the Court finds that Plaintiff's FLSA claims
are subject to arbitration.

### C. The Parties Executed a Valid Arbitration Agreement

     Section 2 of the FAA provides that a written agreement to
arbitrate disputes arising out of a contract involving
interstate commerce "shall be valid, irrevocable, and
enforceable, save upon such grounds as exist at law or in equity
for the revocation of any contract." 9 U.S.C. § 2. The FAA

---

claims to arbitration); Kuehner v. Dickinson & Co., 84 F.3d 316, 319-20 (9th
Cir. 1996).

requires courts to "rigorously enforce" arbitration agreements
and manifests a "strong federal policy in favor of enforcing
arbitration agreements." Dean Witter Reynolds, Inc. v. Byrd, 470
U.S. 213, 217 (1985).

### 1. The FTP's Agreement to Arbitrate

Plaintiff was employed as a nurse at SFH. (Compl. ¶ 7.) On
August 19, 2001, Plaintiff signed an Employee Acknowledgment
Form, which provides, among other things, that she received a
copy of the Tenet Fair Treatment Process contained in the
Employee Handbook:

> I acknowledge that I have received a copy of the Tenet
> Employee Handbook and Standards of Conduct and that I
> understand that they contain important information
> about the company's general personnel policies and
> about my privileges and obligations as an employee.  I
> further understand and acknowledge that I am governed
> by the contents of the Employee Handbook and Standards
> of Conduct and that I am expected to read, understand,
> familiarize myself with and comply with the policies
> contained in them.
>
> . . .
>
> In addition, I acknowledge that I have received and
> reviewed a copy of the Tenet Fair Treatment Process
> brochure.  I hereby voluntarily agree to use the
> Company's Fair Treatment Process and to submit to
> final and binding arbitration any and all claims and
> disputes that are related in any way to my employment
> or the termination of my employment with Tenet.  I
> understand that final and binding arbitration will be
> the sole and exclusive remedy for any such claim or
> dispute against Tenet or its parent, subsidiary or
> affiliated companies or entities, and each of its
> and/or their employees, officers, directors or agents,
> and that, by agreeing to use arbitration to resolve my
> dispute, both the Company and I agree to forego any
> right we each may have had to a jury trial on issues
> covered by the Fair Treatment Process.  I also agree
> that such arbitration will be conducted before an

experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of the American Arbitration Association ("AAA").

I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration, and that the Company further agrees that if I submit a request for binding arbitration, my maximum out-of-pocket expenses for the arbitrator and the administrative costs of the AAA will be an amount equal to one day's pay (if I am a non-exempt employee), or the local civil filing fee, whichever is less and that the Company will pay all of the remaining fees and administrative costs of the arbitrator and the AAA. I further acknowledge that this mutual agreement to arbitrate may not be modified or rescinded except by a written statement signed by both me and the Company.

(Pl.'s Employee Acknowledgment Form (D.E. 14-2); Liddell Decl. ¶ 8.)

The Tenet[4] Fair Treatment Process (the "FTP"), referenced in the Employee Acknowledgment Form, is outlined in the Employee Handbook. (Id. at 2; Tenet Open Door Policy and Fair Treatment Process ("FTP") (D.E. 31-1).) The FTP is described as "a comprehensive mechanism for resolving employment-related disputes between you and the company" and consists of a "multiple-step process that ultimately provides for final and binding arbitration of employment-related disputes if they are not resolved in any of the previous steps in the process." (FTP 1.)

The FTP's arbitration provision states:

---

[4] As noted above, Tenet Healthcare Corporation is SFH's ultimate parent corporation. (Liddell Decl. ¶ 2.)

Your decision to accept employment or to continue employment with the company constitutes your agreement to be bound by the FTP. Likewise, the company agrees to be bound by the FTP. This mutual agreement to arbitrate claims means that both you and the company are bound to use the FTP as the only means of resolving employment-related disputes and to forego any right either may have to a jury trial on issues covered by the FTP.

. . .

If you want to appeal the decision reached in Step 4 of the process, you must obtain and complete a "Request for Arbitration Form" from the Human Resources Department in order to initiate the arbitration process. That form also will serve to confirm your and the company's prior mutual agreement to submit the dispute to final and binding arbitration. The arbitration will be heard by an independent and impartial arbitrator chosen by you and the company. By deciding to arbitrate the dispute, you also agree that the remedy, if any, ordered by the arbitrator will be the only remedy as to all matters that are or could have been raised by you in the arbitration.

(FTP 1-2, 6.)

### 2. The FTP is a Valid Agreement to Arbitrate Under Tennessee Law

In order to determine whether there is a valid agreement to arbitrate, courts employ traditional principles of state contract law. See 9 U.S.C. § 2. Even when applying state contract law, a court must consider the strong federal policy favoring arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Any doubts about whether an agreement is enforceable, including defenses to arbitrability, should be resolved in favor of arbitration. Id.

In Tennessee, "an enforceable contract must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced." Thompson v. Hensley, 136 S.W.3d 925, 929-30 (Tenn. Ct. App. 2003) (quoting Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc., 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002)).

The Court finds that the FTP fits squarely within the framework set forth in Thompson for an enforceable contract. The FTP's agreement to arbitrate expressly states that it is a "mutual agreement to arbitrate claims" and provides that the employee and the company "are bound to use the FTP as the only means of resolving employment-related disputes and to forego any right either may have to a jury trial on the issues covered by the FTP." (FTP 2.) Plaintiff signed the Acknowledgment Form, evidencing her clear consent to be bound by the FTP. (Pl.'s Employee Acknowledgment Form.) Plaintiff does not dispute that she received a copy of the FTP, that she had the opportunity to review it, or that she voluntarily entered into an agreement based on its terms. (See generally Pl.'s Resp.) Moreover, the agreement is supported by consideration because Plaintiff accepted the FTP as a condition of her employment with SFH and both parties mutually promised to arbitrate their claims. See Fisher, 276 F. Supp. 2d at 895 (continued employment with

employer constitutes sufficient acceptance of the agreement and accepting an agreement to arbitrate as a condition of employment constitutes adequate consideration); Wilks v. Pep Boys, 241 F. Supp. 2d 860, 863 (M.D. Tenn. 2003) (mutual promise to arbitrate claims constitutes adequate consideration). Accordingly, the Court finds that the FTP's agreement to arbitrate is an enforceable agreement between Plaintiff and Defendant to arbitrate claims under the FAA.[5]

### D. Plaintiff's Claims Fall Within the Substantive Scope of the Agreement to Arbitrate

Plaintiff argues that her FLSA collective action claim is excluded from the FTP. (Pl.'s Resp. 3-4.) In support, Plaintiff quotes the FTP: "[A]ny non-waivable statutory claims, which may include wage claims . . . are not subject to exclusive review under the FTP." (Id.) Plaintiff argues that the discretionary language of this section——the words "may" and "if you wish"—— mean that she has the discretion to pursue her claims under the FTP *or* with the appropriate agency. (Id.) Thus, because the FLSA expressly authorizes Plaintiff to enforce her rights in a judicial forum, Plaintiff contends that the FTP permits her to choose a judicial forum. (Id.)

---

[5] This conclusion is consistent with decisions of this and other courts that have enforced similar versions of the FTP. See Varallo v. Elkins Park Hosp., 63 F. App'x 601, 2003 WL 1889074 (3d Cir. Mar. 26, 2003); Patterson v. Tenet Healthcare, Inc., 113 F.3d 832 (8th Cir. 1997); Martin v. Saint Francis Hosp., No. 08-2180-JPM-dkv (W.D. Tenn. Sept. 5, 2010); Hurt v. Saint Francis Hosp., No. 08-2859-STA-tmp (W.D. Tenn. March 17, 2010); Davis v. Saint Francis Hosp., No. 00-2243-STA-dkv (W.D. Tenn. Feb. 26, 2010); Jones v. Tenet Health Network, Inc., Civ. A. No. 96- 3107, 1997 WL 180384 (E.D. La. Apr. 7, 1997).

Defendant counters that "a plain reading of the FTP's entire operative language unequivocally establishes that it covers [Plaintiff's] FLSA claim." (Def.'s Reply 3-4.)  The Court agrees.

By its terms, the FTP "covers all disputes relating to or arising out of an employee's employment with the company or the termination of employment" and includes "claims for . . . breach of contract, . . . , or any other legal claims and causes of action recognized by local, state, or federal law or regulations." (FTP 1.) The FTP specifies that "[t]he only disputes or claims not covered by the FTP are those listed in the "Exclusions and Restrictions" section below." (FTP 1.)

In the "Exclusions and Restrictions" section, the FTP provides that certain "excluded issues" may not be submitted for review (or exclusive review) under the FTP.  In pertinent part, it provides:

> [A]ny non-waivable statutory claims, which may include wage [sic] claims within the jurisdiction of a local or state labor commissioner or administrative agency charges before the Equal Opportunity Commission or similar local or state agencies, are not subject to exclusive review under the FTP. This means that you may file such non-waivable statutory claims with the appropriate agency that has jurisdiction over them if you wish, regardless of whether you decide to use the FTP to resolve them.  However, if such an agency completes its processing of your action against the company, you must use the FTP if you wish to pursue your claim (although Steps 1 through 4 may be skipped).

(FTP 6-7.)

By its terms, Plaintiff's FLSA claim falls within the scope of the FTP.  Plaintiff's FLSA claim is a dispute "relating to or arising out of [her] employment with [SFH]." (FTP 1). The wage claims exclusion provision provided Plaintiff with two avenues to pursue her wage claims. Plaintiff could have chosen to pursue her wage claims with an appropriate administrative agency instead of the FTP.  Once that agency completed its processing of Plaintiff's claim, however, she was once again bound to pursue her claim under the FTP, though she could have skipped Steps 1 through 4 and proceeded straight to arbitration. Alternatively, Plaintiff could have pursued her wage claims under the FTP.  In the event that the claims were not resolved under the FTP, Plaintiff would then have been free to pursue her claims in arbitration.

Contrary to Plaintiff's assertions, the discretionary language does not permit an employee to choose a judicial forum to litigate wage claims.  The language merely gives an employee the choice to pursue such claims with an administrative agency in lieu of proceeding through Steps 1 to 4.  Regardless of the path an employee chooses to take to pursue her wage claims, the ultimate forum is arbitration, not the courts. (See FTP 2.)

Accordingly, the Court finds that Plaintiff's FLSA claim falls within the scope of the FTP; it is an employment-related claim provided for by federal law.  Likewise, the remainder of Plaintiff's claims——unjust enrichment/quantum meruit, breach of

13

contract, and violations of the Tennessee Wage Regulation Act——
fall within the scope of the agreement to arbitrate; they are
employment-related claims provided for by state and federal law.

### E. Plaintiff's Defenses to Enforceability Are Unavailing

Even though it is established that the dispute at hand
falls within the scope of the arbitration agreement, Plaintiff
may still avoid arbitration by showing the agreement itself is
invalid or unenforceable.  Great Earth Cos., 288 F.3d at 889.
There are two bases upon which agreements to arbitrate federal
statutory rights may be declared unenforceable: (1) the
agreement is invalid under principles of contract law; or (2)
the provisions contained in the agreement fail to adequately
allow the plaintiff to vindicate her statutory rights.  Walker,
400 F.3d at 377, 385.  With regard to the first point, an
agreement to arbitrate statutory rights must comport with
ordinary principles of state contract law.  Floss, 211 F.3d at
314 ("In deciding whether the agreements are enforceable, we
examine applicable state-law contract principles.").  With
regard to the second point, courts have repeatedly stressed that
agreements to arbitrate claims are valid only "so long as the
prospective litigant effectively may vindicate [his or her]
statutory cause of action in the arbitral forum."  Green Tree
Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000) (quoting
Gilmer, 500 U.S. at 24).  "By agreeing to arbitrate a statutory
claim, [an employee] does not forego the substantive rights

14

afforded by the statute; [he or she] only submits to their resolution in an arbitral rather than a judicial forum." <u>Gilmer</u>, 500 U.S. at 25.

Plaintiff argues that, even if her FLSA claim falls within the scope of the FTP, the agreement to arbitrate is unenforceable on state-law grounds because it is unconscionable. (Pl.'s Resp. 4.) Namely, Plaintiff contends that the following provisions of the FTP are unconscionable and thus, render it unenforceable: (1) the FTP's limitation on recovery of attorney's fees; and (2) the FTP's limitation on collective actions. (Pl.'s Resp. 4-6.) Plaintiff also argues that the Court should decline to enforce the arbitration agreement because the FTP process allows Defendant to "run out the clock" on the claims of Plaintiff and the putative class. (Pl.'s Resp. 6-7.)

Defendant counters that the FTP is not unconscionable, either in its fee provisions or its waiver of class actions. (<u>See generally</u> Def.'s Reply.) Defendant maintains that the Court should dismiss the action, enforce the agreement to arbitrate, and compel Plaintiff to arbitrate her claims on an individual, rather than class-wide, basis.

### 1. The Agreement to Arbitrate Is Enforceable Under Contract Principles

Under the FAA, state law generally governs whether an enforceable agreement to arbitrate exists and state law contract

defenses such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements. <u>Fazio</u>, 340 F.3d at 396. Adhesion contracts are unenforceable in Tennessee if they are unconscionable. <u>See</u> <u>Buraczynski v. Eyring</u>, 919 S.W.2d 314, 320 (Tenn. 1996). "Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability)." <u>Trinity Indus., Inc. v. McKinnon Bridge Co.</u>, 77 S.W.3d 159, 170-71 (Tenn. Ct. App. 2001). Tennessee courts tend to consider both types together, holding that a contract is unconscionable when "the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." <u>Id.</u>

To the extent that Plaintiff's arguments against enforceability are grounded in contract principles, the Court finds that the arbitration provision in the FTP is neither procedurally nor substantively unconscionable. Even though Plaintiff had unequal bargaining power with Defendant, she was an at-will employee and fully free to leave at any time. <u>See</u> <u>Gilmer</u>, 500 U.S. at 32-33 (noting that "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are unenforceable"). Further, Plaintiff presented no evidence that her alleged weaker bargaining

position rendered her with no alternative other than employment with SFH. Cooper v. MRM Inv. Co., 367 F.3d 493, 502 (6th Cir. 2004) (stating that, to find an arbitration contract adhesive, "there must be evidence that [the plaintiff] would be unable to find suitable employment if she refused to sign [the defendant's] agreement"). It also appears that Defendant went to great lengths to ensure that Plaintiff (and all employees) were aware of the terms of the FTP, including the terms of the FTP within the Employee Acknowledgment Form and the Employee Handbook.  Based upon these findings and viewing the totality of the circumstances, the Court find the arbitration provision is neither unconscionable nor unenforceable under Tennessee contract principles.

### 2. The FTP's Provisions Do Not Prevent Plaintiff from Vindicating Her Statutory Rights under the FLSA

The Supreme Court has explained that, even though a statutory claim may be subject to arbitration generally, "the prospective litigant [must be able to] effectively . . . vindicate his or her statutory cause of action in the [specific] arbitral forum." See Gilmer, 500 U.S. at 28 (internal quotations and citations omitted); see also Floss, 211 F.3d at 313-14.

Plaintiff argues that the FTP is unconscionable because it limits recovery of attorney's fees and proceeding as a collective action. (Pl.'s Resp. 4-6.) The Court construes Plaintiff's arguments as asserting that these provisions of the

arbitration agreement prevent her from effectively vindicating her claims under the FLSA.[6]

The Sixth Circuit has recognized that an employee cannot effectively vindicate his or her rights when the arbitration agreement at issue: (1) does not require that the arbitrator be qualified or unbiased, Walker, 400 F.3d at 387; (2) unduly limits discovery, id.; (3) limits remedies available to the employee, Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 670 (6th Cir. 2009); or (4) includes cost-sharing provisions that make arbitration prohibitively expensive for the employee, Cooper v. MRM Inv. Co., 367 F.3d 493, 509, 512 (6th Cir. 2004).

Because none of these concerns are present in this case, the Court finds that the FTP's arbitration agreement is enforceable and nothing contained within it prevents Plaintiff from effectively vindicating her FLSA rights.

### a. Limitation on Attorney's Fees

Plaintiff's first argument focuses on a provision in the FTP that provides that an employee is responsible for the fees and costs of her own representation. Plaintiff argues that this provision renders the FTP unconscionable because it constitutes an impermissible waiver of a statutory right that Congress specifically granted to aggrieved employees under the FLSA.

---

[6] Even under Tennessee law, an arbitration provision is not unconscionable merely because it waives an employee's right to bring a collective action or requires an employee to cover upfront a portion of the fees and costs of arbitration. See, e.g., Pyburn v. Bill Heard Chevrolet, 63 S.W.3d 351, 356 (Tenn. Ct. App. 2001) (holding that a class action waiver and a fee provision did not render an arbitration agreement unenforceable).

(Pl.'s Resp. 5.) Plaintiff further argues that this provision
undermines the purposes of the FLSA's attorney fees provision,
in that it removes the economic incentive for private attorneys
to take FLSA cases and thus, enables Defendant to avoid
liability under the FLSA. (<u>Id.</u>)

> The FTP provides:
>
> The arbitration will be administered by the American
> Arbitration Association ("AAA").  The company and you
> will share the cost of the AAA's filing fee and the
> arbitrator's fees and costs, but your share of such
> costs shall not exceed an amount equal to one day's
> pay (for exempt employees), or eight times your hourly
> rate (for non-exempt employees), or your local court
> civil filing fee, whichever is less.  You and the
> company will be responsible for the fees and costs of
> your own respective legal counsel, if any, and any
> other expenses and costs, such as costs associated
> with witnesses or obtaining copies of hearing
> transcripts.

(FTP 6.) It also states that "no remedies that otherwise would
be available to you or the company in a court of law will be
forfeited by virtue of the agreement to use and be bound by the
FTP." (<u>Id.</u> at 2.)

The Court finds that the arbitration agreement's cost
provision does not prevent Plaintiff from enforcing her
statutory rights in arbitration.  Nothing in the cost provision
would discourage employees from prosecuting their claims.
Although the fee provision states that each party will be
responsible for their own costs and attorneys' fees, the FTP
also provides that no remedy otherwise provided for by the FLSA
will be forfeited.  Thus, if Plaintiff prevails on her FLSA

claims at arbitration, and thereby becomes entitled to attorneys' fees under the statute, the arbitrator would be required by the agreement to grant the fees.  Contrary to Plaintiff's assertions, the FTP's agreement to arbitrate does not deny Plaintiff her ability to recover attorney's fees if she prevails.

Moreover, to the extent that Plaintiff's attack on the FTP's fee provisions may be construed as an argument that the costs of arbitration in the FTP are prohibitive, it likewise fails.  "[T]he party seek[ing] to invalidate an arbitration agreement on the ground that arbitration is prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." Pyburn v. Bill Heard Chevrolet, 63 S.W.3d 351, 363 (Tenn. Ct. App. 2001) (quoting Randolph, 531 U.S. at 90)). The Sixth Circuit has held that "where 'the overall cost of arbitration, from the perspective of the potential litigant, is greater than the cost of litigation in court,' and the 'additional expense . . . would deter potential litigants from bringing their statutory claims in the arbitral forum,' [a] cost-splitting provision is unenforceable." Mazera v. Varsity Ford Mgmt. Svs., LLC, 565 F.3d 997, 1003 (6th Cir. 2009) (quoting Morrison, 317 F.3d at 664).  Plaintiff has produced no evidence that arbitration is prohibitively expensive. Moreover, the fee provisions would impose no greater cost on Plaintiff to arbitrate her claims than the cost of litigating in court. See,

20

e.g., Pyburn, 63 S.W.3d at 363 (holding that the arbitration
agreement was enforceable, despite the provision providing that
the plaintiff advance the initial filing fee, because the costs
could be fully recouped by the prevailing plaintiff pursuant to
the fee shifting provisions of the agreement). Accordingly, the
Court finds that the FTPs arbitration fee provisions do not
render the FTP's arbitration provision unenforceable.

### b. Class Action Waiver

Plaintiff argues that the FTP agreement to arbitrate is
unconscionable because, as interpreted by Defendant, it
precludes proceeding on a class or collective basis.  Standing
alone, Plaintiff's inability to proceed on a collective basis in
arbitration does not render the FTP's arbitration agreement
unenforceable.  In Gilmer, the Supreme Court rejected the
contention that a class action waiver in an arbitration
agreement is unenforceable merely because the relevant statute
allows for class or collective actions. 500 U.S. at 32.[7] "The
fact that certain litigation devices may not be available in an
arbitration is part and parcel of arbitration's ability to offer
'simplicity, informality, and expedition.'" Caley v. Gulfstream
Aerospace Corp., 428 F.3d 1359, 1378 (11th Cir. 2005) (quoting
Gilmer, 500 U.S. at 31).  These are "characteristics that

---

[7] Although dicta, that rejection is persuasive. Am. Civil Liberties Union of
Kentucky v. McCreary Cty., Ky., 607 F.3d 439, 447 (6th Cir. 2010) ("Lower
courts are 'obligated to follow Supreme Court dicta, particularly where there
is not substantial reason for disregarding it, such as age or subsequent
statements undermining its rationale.'") (quoting United States v. Marlow,
278 F.3d 581, 588 n.7 (6th Cir. 2002)).

generally make arbitration an attractive vehicle for the resolution of low-value claims." Id. (quoting Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC, 379 F.3d 159, 174-75 (5th Cir.2004)).

Nevertheless, an arbitration agreement precluding class arbitration, whether expressly or impliedly, may be unenforceable if it effectively prevents claimants from vindicating their statutory rights in the arbitral forum. See Gilmer, 500 U.S. at 27-28. Accordingly, courts have invalidated class action waivers where plaintiffs demonstrated that their inability to pursue arbitration on a class basis would be tantamount to an inability to assert their claims at all. See, e.g., In re Am. Express Merch. Litig., 554 F.3d 300, 302 n.1 (2d Cir. 2009) (striking class action waiver where it deprived claimants of their only feasible means of recovery).

Plaintiff argues that precluding her from proceeding collectively would effectively foreclose her rights under the FLSA. (Pl.'s Resp. 6.) The Court disagrees. "Requiring Plaintiff to arbitrate her claim individually does not diminish either the remedial or protective functions of the FLSA." Johnson v. Carmax, Inc., No. 3:10-CV-213, 2010 WL 2802478, at *4 (E.D. Va. July 14, 2010) (citing Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220,227 (1987)).

The Supreme Court has held that FLSA rights, such as the right to basic statutory minimum wage, the right to overtime,

wages, and the right to liquidated damages, "may not be abridged
by contract or otherwise waived." <u>Barrentine v. Arkansas-Best
Freight Sys</u>., 450 U.S. 728, 740 (1981).  However, the "mere fact
that class actions are mentioned within § 216(b) does not create
a 'right' for a plaintiff to bring a class action." <u>Brown v.
Sears Holding Mgmt. Corp.</u>, No. 09 C 2203, 2009 WL 2514173, at *3
(N.D. Ill. Aug. 17, 2009) (concluding that "it is the underlying
availability of remedies provided in the FLSA, such as back
wages, liquidated damages, etc., that constitute rights that
cannot be abridged by private agreement, rather than the dispute
resolution mechanisms that can be employed to determine legal
entitlement to those remedies"). The Court finds that none of
Plaintiff's potential FLSA remedies are jeopardized if she is
deemed to have released her ability to proceed in a class
action.

Moreover, the FTP states that all of the remedies available
under the FLSA, including the award of attorney's fees to the
prevailing party, will be available to Plaintiff in arbitration.
(FTP 2.) Thus, Plaintiff is not prevented from obtaining
competent legal representation nor disincentivized from pursuing
her FLSA claims.  Accordingly, the Court finds that, even in
the absence of collective action, the FTP's arbitration

provision is enforceable and does not prevent Plaintiff from vindicating her FLSA rights in the arbitral forum.[8]

### 3. The FTP's Procedural Provisions do Not Prevent Enforceability

Plaintiff argues that the Court should not enforce the arbitration agreement because it allegedly permits SFH to "run out the clock" on the collective claims, thus divesting individuals of their FLSA rights. (Pl.'s Resp. 6-7.) The Court declines to consider Plaintiff's argument.  As a matter of federal arbitration law, whether the FTP's procedural limitations period is unenforceable is determined by the arbitrator, not the Court.  Howsam v. Dean Witter Reynolds, 537 U.S. 79, 84 (2002) (holding that "allegations of waiver, delay, or like defenses to arbitrability" are issues of procedural arbitrability and presumptively for arbitrators to decide).

---

[8] Defendant argues that the FTP does not provide a mechanism for class arbitrability; thus, the Court should preclude Plaintiff from proceeding on a collective basis because the parties did not agree to it. (Def.'s Mot. to Dismiss 2 n.2.) Plaintiff counters that, if the FLSA claims fall within the scope of the FTP, the parties implicitly agreed to class arbitration because the FLSA explicitly provides for it. (Pl.'s Resp. 7-8.) The FTP does not specifically waive class arbitration, nor does it implicitly permit it. In a recent opinion, the Supreme Court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S.Ct. 1758, 1775 (2010).  Though its reach is not yet defined, Stolt-Nielsen suggests that an agreement's silence on the availability of class wide arbitration is tantamount to a prohibition. Whether the FTP is silent on class arbitration, however, is an issue for the arbitrator, not this Court. See Green Tree Fin. v. Bazzle, 539 U.S. 444, 452-53 (2003) (reasoning that such procedural issues are not among the "limited" types of questions——such as "whether the parties have a valid arbitration agreement at all"——generally intended for judicial resolution, and that "[a]rbitrators are well situated to answer" such procedural issues because they turn on "contract interpretation and arbitration procedures") (plurality opinion); see also Smith, 2010 WL 4789947, at *2.

## F. The Instant Case Should Be Dismissed

Defendant asks the Court to dismiss, as opposed to stay, the instant case. (Def.'s Mem. 11-12.) The Sixth Circuit permits district courts to dismiss actions "where all claims are . . . to be submitted to arbitration and retaining jurisdiction would serve no purpose." Prude v. McBride Research Labs., No. 07-13472, 2008 WL 360636, at *7 (E.D. Mich. Feb. 8, 2008); see also Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000) (citing Alford v. Dean Witter Reynolds, Inc., 975 F.3d 1161, 1164 (5th Cir. 1992)).  In the instant case, the arbitration clause "covers all disputes relating to or arising out of an employee's employment with the company . . . ." (FTP 1.)  All of Plaintiff's claims "relat[e] to or aris[e] out of [her] employment with [SFH]" and are thus subject to arbitration. (FTP 1; Compl. ¶¶ 1, 42.) The Court finds that staying the action and retaining jurisdiction would serve no purpose. Accordingly, Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE and the parties are directed to proceed to arbitration in accordance with the terms of the agreement to arbitrate.

## III. PLAINTIFF'S MOTION TO TRANSFER VENUE

Having determined that Plaintiff's claims are subject to arbitration and that her complaint should be dismissed, the Court finds that Plaintiff's motion to transfer is moot. Accordingly, Plaintiff's Motion to Transfer Venue is DENIED as MOOT.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Compliance with Agreement to Arbitrate. The Court DENIES as MOOT Plaintiff's Motion to Transfer Venue. Plaintiff's complaint is hereby DISMISSED WITHOUT PREJUDICE and the parties are DIRECTED to proceed to arbitration in accordance with the terms of the agreement to arbitrate.

**IT IS SO ORDERED,** this 27th day of January, 2011.

/s/ JON PHIPPS McCALLA
CHIEF UNITED STATES DISTRICT JUDGE